IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JENNY M. HIGH,

    Plaintiff,

v.                                                    Civil Action No.: 3:21-cv-81

WELLS FARGO BANK,
    **SERVE:**    **Corporation Service Company**
                       **100 Shockoe Slip, 2nd Floor**
                       **Richmond, VA  23219**

    Defendant.

**JURY TRIAL
DEMANDED**

## COMPLAINT

The plaintiff Jenny M. High ("Ms. High"), by counsel, submits this Complaint against the defendant Wells Fargo Bank ("Wells Fargo"), for national origin discrimination and retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981(a).

## INTRODUCTION

Ms. High was an 18-year employee of Wells Fargo, working in the Information Technology ("IT") department in Glen Allen, Virginia. On June 8, 2017, during a conference call among her IT co-workers and managers, one of the team leaders made racially-charged joke that was a slur against Hispanics, specifically Mexicans. Ms. High and her co-workers were shocked that such a remark was permitted to be uttered as it was contrary to the Wells Fargo work culture that claimed to value civility and inclusion. Some of Ms. High's co-workers complained about the incident to the Human Resources Department.

In March 2018, a reorganization within the IT department occurred, and Ms. High was transferred to the same team as the leader who uttered the racial joke. Ms. High complained about the incident to three team managers and asked to be removed from the team leader's supervision. The request was denied, and Ms. High suffered extreme emotional anguish as a result. After complaining, moreover, Ms. High began to be subjected to unjustified criticism of her job performance and assigned low-level work on top of her usual workload. Finally, at a team conference in St. Louis in June 2018, Ms. High was verbally attacked by her managers over her complaints of racism which resulted in her suffering a severe panic attack. She was forced to take a medical leave of absence due to the severe emotional turmoil and distress. Ms. High received short-term disability benefits, followed by long-term disability benefits. When that pay stopped due to a mistake made by the disability insurance carrier, Wells Fargo terminated Ms. High's employment.

Ms. High is suing for lost salary and benefits, for extreme emotional distress and mental anguish she has endured, and injury to her career, inconvenience and financial ruin.

PARTIES

1. Ms. High is a female of Hispanic ethnicity and Dominican national origin residing in Henrico County, Virginia.

2. Wells Fargo is believed to be a corporation engaged in the provision of retail bank services. It operates banking operations throughout the nation, including central Virginia. Ms. High worked for Wells Fargo out of its Richmond-area Information Technology Group located at 4340 Innslake Drive, I, Glen Allen, Virginia  23060, in Henrico County.

3. Wells Fargo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

JURISDICTION and VENUE

4. This District Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights). Venue is proper in this District as it is the location of the defendant and the events complained of herein.

PROCEDURAL HISTORY

5. On June 14, 2018, Ms. High, acting *pro se*, filed a timely administrative Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 438-2018-01205). The Charge alleged that Wells Fargo subjected Ms. High to disparate treatment on the basis of her sex (equal pay), to a hostile work environment on the basis of her national origin (Hispanic/Dominican), and retaliated against her for engaging in a protected activity (complaining of a hostile work environment when transferred to work with a team lead who uttered a racial slur). The Charge alleged that Ms. High was constructively discharged from her employment in July 2018. She alleged violations of the Virginia Human Rights Act, the Equal Pay Act, and Title VII. On June 18, 2018, the Charge of Discrimination was transferred to the Virginia Attorney General, Division of Human Rights, pursuant to the work sharing agreement.

6. On December 3, 2019, the Division of Human Rights issued a Determination finding no reasonable cause to believe that Wells Fargo discriminated or retaliated against Ms. High. Ms. High received a Dismissal and Notice of Rights from the EEOC dated January 16, 2020 allowing her 90 days to commence suit in court.

7. On February 24, 2020, Ms. High, still acting *pro se*, filed a Complaint with this District Court, along with a motion to proceed *in forma pauperis*. (Civil Action No. 3:20-cv-121) On April 13, 2020, the Court dismissed Ms. High's Complaint WITHOUT PREJUDICE for failure

3

to prosecute (ECF No. 5) for failure to comply with the Court's Order of March 10, 2020 (ECF No. 2) directing her to file a long form *in forma pauperis* application, submit a Ghostwriting Form in compliance with Local Rule 83.1(M), and to file an Amended Complaint that complies with Fed. R. Civ. P. 8.

8. On March 27, 2020, Ms. High filed a second EEOC Charge of Discrimination alleging disability discrimination and retaliation in Wells Fargo's termination of her employment. (Charge No. 438-2020-00557) The EEOC issued a Dismissal and Notice of Rights dated November 18, 2020.

9. The present Complaint complies with the Court's order of March 10, 2020 directing her to submit an amended pleading that complies with Fed. R. Civ. P. 15(a), namely that it contain a "short and plain statement of the claim showing that {Ms. High] is entitled to relief," as well as a statement of the Court's jurisdiction and a demand for relief sought. This Complaint relates back to the allegations contained in her prior Complaint (Civil Action No. 3:20-cv-121), pursuant to Fed. R. Civ. P. 15(c). This action is timely filed and all procedural prerequisites to suit have been met.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Ms. High commenced employment with Wells Fargo in January 2004, initially as a Help Desk Associate. Eventually, Ms. High was promoted to the position of Systems Support Analyst in Wells Fargo's Enterprise Information Technology Group. At the time of her constructive discharge, Ms. High was earning a salary of approximately $108,000 annually, including overtime, plus fringe benefits.

11. In the years preceding the events complained of herein, Ms. High routinely received satisfactory to superior performance evaluations from her managers.

12. On or about June 8, 2017, during a conference call that included system support analysts from across the United States, a leader of another team named Paul Salmela made a crude and derogatory joke about Mexicans that involved how many Mexicans were needed to change a lightbulb. The joke was a racial slur indicating that Mexicans specifically, and Hispanics generally, were lazy and exhibited a poor work ethic.

13. As a woman of Hispanic ethnicity and Dominican national origin, the derogatory joke created an extremely hostile work environment for Ms. High.

14. Various members of her team complained to Salmela about the derogatory comment, and he later apologized to her and the team via email.

15. In or about March 2018, Wells Fargo reorganized the IT Group and Ms. High was placed on a team with Salmela. Ms. High was the only Hispanic individual on this new team.

16. Ms. High was distressed about being placed on Salmela's team and had a conversation with one of the managers of her new team named Larry Cullinan, wherein she pleaded to be place on a different team. Cullinan refused Ms. High's request and responded that she needed to let go of her concern and anxiety.

17. On or about March 12, 2018, Ms. High followed up that conversation with an email to Cullinan that addressed "Paul Salmela's racist comments." The email stated in relevant part:

> I understand that you will never understand what it feels like to be discriminated against, and in your opinion, since it only happened one time I should get over it. I have to learn to work with him, we all do, because you have. Larry I refuse to become a victim at the place I love to work. I know a lot of good people Paul has victimized including myself, and you do as well. The racist comment was the last straw that broke this camel's back, for you it may have been one time for me it was the last time. You advised me that someone filed a complaint against Paul regarding the racist comment and he was remorseful, you handled it, and me filing another complaint would probably be bounced back to you and end with the same results. I am very disappointed with that response. You asked me what do I want the outcome to be? I wanted you to protect the people you are being paid to protect, be a manager. I did what it tells in the Wells Fargo required trainings to do, we all did, and you are complacent. That's like hiding an

abuser, a killer, matter of fact when you said, "he only did it one time it was a mistake," and I said, "killers make mistakes" you agreed. Larry you do not understand that in this day and age when you have a bully in your workplace, which is also one of the trainings we all were required to take, and you keep covering for them, your just as guilty for his offenses as he is. I have done exceptionally well staying away from him. I have dear friends that have been tormented, and are going to therapy. I am extremely stressed out, and I am normally the one who is the most productive person here. Where do we go from here this is not fair to any of us. We may work remotely, however words hurt, and there are laws, business codes of ethics, and human rights that protect me. . . .

18. After two days passed without a response to the email from Cullinan, Ms. High spoke to fellow team manager Tim Starr about the matter and sent him a copy of the above email to Cullinan. Starr told Ms. High that he forwarded the email to his superior William Piper, who purportedly forwarded the email to Wells Fargo's Human Resources Department. Starr told Ms. High that Human Resources would commence an investigation.

19. Ms. High complied with Wells Fargo's protocol in reporting the derogatory statement along with her request to be moved to another team within the IT Group, which would not have posed an unreasonable burden to Wells Fargo since the IT teams worked remotely. By complaining of the hostile work environment connected to her status as an ethnic and nationality of origin minority, Ms. High engaged in a protected activity under Title VII.

20. Neither Cullinan, Starr nor Piper honored Ms. High's request to be moved away from Salmela. None did anything to protect her from the hostile work environment, even after she advised them of the emotional impact that the racially-offensive comments had on her.

21. In or about May 2018, Ms. High developed problems with her work-provided laptop computer that hindered her ability to perform assignments. She notified the help desk and while waiting for a replacement computer, Ms. High received several complaints regarding her supposed failure to work.

6

22. During this same month of May, Ms. High's supervisors began to assign her "tickets," which were generated when Wells Fargo employees requested assistance with computer hardware, software and network issues. Responding to tickets were a low-level function of systems supports analysts, and Ms. High had not performed such rudimentary work since her earliest days with Wells Fargo. Further, the ticket assignments were imposed on top of her normal volume of assignments. In addition, Ms. High's supervisors began to accuse her of not completing assignments that she had in fact completed.

23. Finally, someone in the IT team sabotaged Ms. High's work by not renewing the access she need to complete assignments. The IT team leadership administered the access to the work files.

24. Upon information and belief, the deprivation of system access, piling on of low-level ticket work and charges of incomplete assignments were materially-adverse actions that altered the terms, conditions and benefits of her employment, and such actions were taken in retaliation for complaining of the hostile work environment based on ethnic and national origin discrimination.

25. Ms. High later learned that none of her complaints had been forwarded to Wells Fargo's Human Resources Department, despite assurances from Starr and Piper that they were. As a result, on or about June 13, 2018, Ms. High submitted a complaint directly to Human Resources regarding Salmela's racial joke and her desire to removed from his IT team. Ms. High also forwarded to Human Resources the name of individuals who witnessed Salmela's racist joke but neither she nor her witnesses were contacted by the Department.

26. In the ensuing weeks, Ms. High sent Piper numerous emails regarding discrimination, retaliation and harassment. Ms. High indicated that the discrimination was affecting her well-being. However, she received no response from Piper.

27. In late June 2018, Wells Fargo scheduled a retreat for the Enterprise IT Group of system analysts in St. Louis, Missouri. During the second day of the retreat, Ms. High attended a meeting that included several co-workers. Cullinan, Salmela and a co-worker named Joseph Dillon ganged up on her and hurled insults and smears regarding Ms. High's job performance, work ethic and character. In particular, the three accused Ms. High of not working, lying about her laptop computer malfunctioning and claimed that she never notified the help desk that it needed repair.

28. In addition, the three managers insisted that Ms. High was incompetent in her job duties and needed to be demoted to the help desk. They accused her of deliberately refusing to work on the tickets assigned to her. Cullinan in particular accused Ms. High of being lazy and clueless about her job responsibilities. Whenever Ms. High tried to speak up to defend herself, the three spoke over her, not letting her respond. When Piper walked into the meeting, however, Cullinan, Salmela and Dillion suddenly stopped berating Ms. High and behaved as though nothing had happened.

29. But by this time, the attacks on Ms. High made her feel as if the three men had a choke hold around her neck, flooding her mind with flashing memories of abuse suffered in a prior violent relationship. The attacks from the team managers were so unbearable that Ms. High could no longer able to defend herself. She developed a sudden migraine headache and began rapidly hyperventilating. Even more frighteningly, Ms. High felt as if she was suffering a heart

attack and requested an ambulance. It was apparent later that Ms. High suffered a panic attack in reaction to the trauma. She left the retreat and flew home.

30. Ms. High was too emotionally distraught following the attack experienced at the retreat to return to work. On or about July 1, 2018, her physician placed her on a medical leave of absence. The leave and separation from active employment resulted from Wells Fargo's subjecting Ms. High to a hostile work environment that belittled her Hispanic ethnicity and Dominican national origin, as well as the distress suffered from the materially adverse actions taken against her in retaliation for complaining of the workplace hostility. The conditions created by Wells Fargo were so intolerable that a reasonable person could not have endured it without leaving.

31. In or about October 2019, Ms. High's long-term disability benefits were terminated because of Wells Fargo's nonpayment of insurance premium payments to the company administering Wells Fargo's disability benefit plan. This prompted Wells Fargo to terminate Ms. High's employment on October 18, 2019. The dismissal constituted constructive discharge from her employment in violation of Ms. High's rights under Title VII and 42 U.S.C. § 1981.

32. As a direct and proximate result of Wells Fargo's retaliatory actions, Ms. High has suffered loss of income, mental and emotional distress, embarrassment, humiliation, inconvenience, and litigation expenses, including attorney's fees.

COUNT I
NATIONAL ORIGIN DISCRIMINATION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 2000e-2

33. By subjecting Ms. High to a hostile work environment and constructively discharging her employment on the basis of her Hispanic ethnicity and Dominican national origin, as

described herein, Wells Fargo violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

34. Ms. High's injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

COUNT II
ETHNIC CHARACTERISTIC AND NATIONAL ORIGIN DISCRIMINATION
CIVIL RIGHTS ACT OF 1866
42 U.S.C. § 1981

35. By subjecting Ms. High to a hostile work environment and constructively discharging her employment on the basis of her Hispanic ancestral and ethnic characteristics and her Dominican national origin, as described herein, Wells Fargo violated her rights under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981(a).

36. Ms. High's injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

COUNT III
RETALIATORY DISCHARGE
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 2000e-2

37. By constructively discharging Ms. High in retaliation for engaging in the protected activity of complaining to her superiors about the discrimination and hostile work environment

to which she was subjected on the basis of her Dominican national origin, as described herein, Wells Fargo violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

38. Ms. High's injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, severe pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

COUNT VI
RETALIATORY DISCHARGE
CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 1981

39. By constructively discharging Ms. High in retaliation for engaging in the protected activity of complaining to her superiors about the discrimination and hostile work environment to which she was subjected on the basis of her Hispanic ancestral and ethnic characteristics and Dominican national origin, as described herein, Wells Fargo violated her rights under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981(a).

40. Ms. High's injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, severe pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

WHEREFORE, the plaintiff Jenny M. High demands judgment against the defendant Wells Fargo Bank, reinstating her to her former position, and awarding her the sum of ONE

MILLION DOLLARS ($1,000,000.00) in compensatory and punitive damages; plus attorney's fees, costs of suit, and such other and further relief as this Court may deem just and proper.

                                        Respectfully submitted,

                                        JENNY M. HIGH

                                        By: /s/ Scott G. Crowley
                                        Scott Gregory Crowley
                                        Virginia Bar No. 31216
                                        Attorney for Jenny M. High
                                        Crowley & Crowley, P.C.
                                        4870 Sadler Road, Suite 300
                                        Glen Allen, VA  23060
                                        Tel.:  (804) 205-5010
                                        Fax: (804) 205-5001
                                        Email: scrowley@crowleyandcrowley.com