IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **JENNY M. HIGH,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 3:21-cv-81 |
| **WELLS FARGO BANK,** | ) |
| Defendant. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Wells Fargo Bank, N.A., erroneously sued as Wells Fargo Bank ("Wells Fargo"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint (ECF No. 5; cited herein as "Compl.").

### INTRODUCTION

Plaintiff Jenny M. High, who alleges she is of Hispanic ethnicity and Dominican national origin, brought this action against Wells Fargo asserting employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981(a) ("§ 1981"). High's Title VII claims are time-barred, in part because she never exhausted her administrative remedies, and in part because she failed to file a civil action within 90 days after receiving a Right to Sue Notice from the Office of Attorney General of Virginia Division of Human Rights ("Division of Human Rights"). High has also failed to sufficiently plead hostile work environment, intentional discrimination, and retaliation causes of action under Title VII and § 1981. Accordingly, the

1

lawsuit should be dismissed under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

High brings this action for employment discrimination against her former employer, Wells Fargo, under Title VII and § 1981. High identifies her ethnicity as Hispanic and her national origin as Dominican. (Compl. ¶ 13.)

In June of 2017, High was working as a Systems Support Analyst for Wells Fargo when at a team leader named Paul Salmela told one offensive joke at a team meeting. (Compl. ¶¶ 10, 12.)[1] Salmela apologized by email shortly after telling the joke. (Compl. ¶ 14.) High alleges that approximately nine months later, in March of 2018, she sent an email to her new team leader complaining about Salmela's June 2017 comments, to no avail. (Compl. ¶ 17.) High does not allege that Salmela or any other Wells Fargo employee ever made any other comment regarding ethnicity or national origin.

High alleges that in May of 2018, she began having technical problems with her work laptop that interfered with her ability to complete her work assignments, and her supervisors began assigning her low-level tasks in addition to her regular work. (Compl. ¶¶ 21-22.) High further alleges that someone on her team sabotaged her work by failing to renew her access to the system so she could complete her work assignments. (Compl. ¶ 23.)

High alleges that during a retreat in late June of 2018, several co-workers, including Salmela, accused her of poor performance and incompetence and would not allow her to defend herself. (Compl. ¶¶ 27-28.) According to High, as a result of this negative interaction with her co-

---

[1] Wells Fargo's business records list High's title as Business Systems Consultant in June 2017. However, for purposes of this Motion only, Wells Fargo accepts as true Plaintiff's allegation that she worked as a Systems Support Analyst in June of 2017.

2

workers, she experienced a panic attack and went out on a medical leave of absence on or about July 1, 2018. (Compl. ¶¶ 29-30.) High alleges that Wells Fargo stopped paying insurance premiums for her long-term disability benefits more than one year later, in approximately October 2019. (Compl. ¶ 31.) High further alleges that the cancellation of her long-term disability benefits prompted Wells Fargo to terminate her employment on October 18, 2019. (*Id*.)

On June 14, 2019, prior to going out on leave, High dual-filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Office of Attorney General of Virginia Division of Human Rights, alleging retaliation and discrimination on the basis of sex and national origin under Title VII, the Virginia Human Rights Act, and the Equal Pay Act. The Division of Human Rights issued a No Reasonable Cause Determination on December 3, 2019, and a Right to Sue Notice on January 16, 2020.[2] (Compl. ¶ 6.)

High filed a complaint on February 24, 2020 in this Court in Docket No. 3:20-cv-00121-MHL ("First Action"), which the Court dismissed on April 13, 2020, for failure to prosecute. (*See* First Action ECF No. 5.) Meanwhile, High dual-filed a second Charge of Discrimination with the EEOC and Virginia Division of Human Rights on March 27, 2020, alleging her discharge was discriminatory based on her disability in violation of the Americans with Disabilities Act, and also in retaliation for filing her previous EEOC Charge in violation of Title VII. (A copy of the March 27, 2020 Charge is attached hereto as Exhibit A).[3] High received a Notice of Right to Sue on this second Charge on November 18, 2020. (Compl. ¶ 8.) On February 12, 2021, High filed an amended

---

[2] High pled that she received the Right to Sue Notice on January 16, 2020. Where a plaintiff pleads the date she received a right-to-sue notice, the Court should accept that date for purposes of a motion to dismiss. *See Severino-Todd v. Wal-Mart, Inc.*, No. 5:11-CV-336-BR, 2011 WL 6370483, at *2 n.2 (E.D.N.C. Dec. 20, 2011), *aff'd*, 470 F. App'x 139 (4th Cir. 2012) ("Here, plaintiff has specifically pled that she received the right-to-sue letter on 22 March 2011. Therefore, for the purposes of the motion to dismiss, the court must . . . assume that the actual date of receipt was 22 March 2011.") (citations omitted)).

[3] "'At the motion to dismiss stage, documents attached to a motion to dismiss need not be accompanied by a formal declaration authenticating them.'" *Six v. Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018) (quoting *Solum v. Certainteed Corp.*, 147 F.Supp.3d 404, 409–10 (E.D.N.C. 2015)).

complaint in the First Action (First Action ECF No. 9). Because of the 10-month delay, the Court ordered the amended complaint to be filed as opening a new civil action, this one. (First Action ECF No. 11; *see* current action ECF (hereinafter simply "ECF") No. 1.)

The current Amended Complaint was filed February 17, 2021. (ECF No. 5.) The Amended Complaint in this action attempts to state claims for National Origin Discrimination under Title VII (Count I); Ethnic Characteristic and National Origin Discrimination under § 1981 (Count II); Retaliatory Discharge under Title VII (Count III); and Retaliatory Discharge under § 1981 (Count IV; mislabeled "Count VI").

## LEGAL ANALYSIS

**I.      STANDARD OF REVIEW.**

To survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). A complaint can survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679 (citations omitted).

## II. HIGH DID NOT FILE SUIT ON THE TITLE VII HOSTILE WORK ENVIRONMENT AND RETALIATION CLAIMS ASSERTED IN HER JUNE 14, 2018 EEOC CHARGE WITHIN THE LIMITATIONS PERIOD.

Before filing a lawsuit, a plaintiff alleging employment discrimination in violation of Title VII must first timely file an administrative charge of discrimination with the EEOC. *E.g., Ghebreab v. Inova Health Sys.*, No. 1:16-CV-1088-LMB-JFA, 2017 WL 1520427, at *6 (E.D. Va. Apr. 26, 2017). Once served with the EEOC's "Right to Sue" notice, the plaintiff must initiate a civil action within 90 days. 42 U.S.C. § 2000e–5(f)(1); *Watts—Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993); *Weakley v. Homeland Sec. Sols., Inc.*, No. 3:14CV785, 2015 WL 11112158, at *9 (E.D. Va. May 19, 2015), *aff'd*, 622 F. App'x 253 (4th Cir. 2015). The 90-day filing requirement is "strictly construed." *Davis v. Navy Fed. Credit Union*, No. 1:11CV01282, 2012 WL 73233, at *5 (E.D. Va. Jan. 10, 2012), *aff'd*, 474 F. App'x 398 (4th Cir. 2012); *see also Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007) ("the prospective plaintiff has no more than ninety (90) days after the EEOC issues its Notice of Right to Sue to file suit").

High had until April 15, 2020—90 days from the date she received her Notice of Right to Sue on January 16, 2020—to file a lawsuit based on the allegations contained in her June 14, 2018 Charge. Those allegations included Title VII claims of a hostile work environment and retaliation for her internal discrimination complaints. High's Title VII hostile work environment and retaliation claims are therefore untimely because she filed them 10 months after the strict April 15, 2020 deadline, on February 12, 2021. *See, e.g., Harvey v. New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987) (Title VII action filed 91 days after the claimant's wife received Right to Sue notice was untimely); *Smith v. N. Va. Orthodontics Ctr., LLC.*, No. 1:18-CV-1244, 2019 WL 3225686, at *2 (E.D. Va. July 16, 2019) ("It is [] well-established that courts uniformly apply this

5

limit strictly and will dismiss a suit for missing the deadline by even one day.") (internal citations omitted); *Severino-Todd*, 2011 WL 6370483, at *5 & n.6 (lawsuit filed two days after 90-day deadline dismissed as untimely); *Watts–Means*, 7 F.3d at 42 (lawsuit filed five days after 90-day filing deadline dismissed as untimely).

The dismissal of High's timely-filed complaint in the First Action without prejudice did not toll the statute of limitations for the Title VII claims contained therein. Therefore, "[a]lthough [the] prior case was filed in a timely manner, the statute of limitations continued to run without interruption from the time her claim accrued." *Kinton v. Saul*, No. 3:20-CV-32, 2020 WL 4283928, at *3 (E.D. Va. July 27, 2020) (citing *Quinn v. Watson*, 145 F. App'x 799, 800 (4th Cir. 2005)). The Court's dismissal without prejudice does not permit Ms. High to file a later complaint outside the statute of limitations. *Id*.

Even though High filed her initial Complaint *pro se*, her then-*pro se* status did not relieve her from strict compliance with the filing deadline. *See Nickles v. Bank of Am. Corp.*, No. 1:13-CV-798, 2013 WL 5462621, at *2 n.2 (M.D.N.C. Sept. 30, 2013) (noting that "[t]he United States Supreme Court has declined to relax the EEOC deadlines for *pro se* plaintiffs") (citing *However Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n. 4)); *Weakley*, 2015 WL 11112158, at *10 (*pro se* plaintiff's employment discrimination action untimely where complaint was filed one day after expiration of 90-day Right to Sue period); *Pledger v. Fairfax Cty.*, No. 3:13-CV-740-JAG, 2014 WL 2040068, at *2 (E.D. Va. May 16, 2014) (dismissing *pro se* plaintiff's employment discrimination complaint when filed four days late and noting that "the adage that 'close only counts in horseshoes and hand grenades' applies in equal measure to Title VII's 90-day filing deadline.").

6

High did not file her Title VII hostile work environment and retaliation claims in time. Accordingly, the Court should dismiss them.

### III. THE COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT HIGH'S HOSTILE WORK ENVIRONMENT CLAIMS (COUNTS I AND II).

Courts analyze § 1981 and Title VII hostile work environment claims similarly. *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 184 (4th Cir. 2020) ("The elements of a hostile work environment claim are the same under either § 1981 or Title VII."); *Crawford v. Newport News Indus. Corp.*, No. 4:14cv130, 2018 WL 2943445, at *2 (E.D. Va. June 11, 2018) ("The elements of a hostile work environment claim under § 1981 or Title VII are the same, and courts look to Title VII cases when considering a hostile work environment claim under § 1981.") To state a hostile work environment claim under either statute, a plaintiff must allege (1) unwelcome conduct; (2) based on the plaintiff's membership in a protected class[4]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020). If the operative complaint does not support a reasonable inference that any of the conduct relates to ethnicity or national origin, it cannot survive a motion to dismiss. *Id.*

High has not sufficiently pled a hostile work environment (Counts I and II) because she has not alleged conduct sufficiently severe or pervasive to have altered her work conditions. Instead, she alleges only one example of one remark arguably tied to her ethnicity (Hispanic of

---

[4] The Fourth Circuit has recognized ethnicity as cognizable under § 1981. *Sorto v. AutoZone, Inc.*, No. 19-1278, 821 F.App'x 188, 197 (4th Cir. Jul. 21, 2020) ("Disparaging references based on Sorto's Hispanic ethnicity are actionable under § 1981.") However, unlike Title VII, there is no cause of action for national origin discrimination under § 1981. *Archibald v. Masters*, No. 5:12CV00095, 2013 WL 461802, at *3 (W.D. Va. Feb. 5, 2013), *adopted*, No. 5:12CV095, 2013 WL 1748423 (W.D. Va. Apr. 23, 2013), *aff'd*, 539 F. App'x 131 (4th Cir. 2013). Therefore, to the extent High's claims under § 1981 rely only on her national origin, they fail as a matter of law. *See also Mazaiwana v. Progressive N. Ins. Co.*, No. 3:19-cv-444, 2020 WL 14825592, at *3 (E.D. Va. Mar. 27, 2020) ("Section 1981 ... 'does not provide protection for individuals discriminated against on the basis of national origin.'").

7

Dominican national origin)—a single joke "that involved how many Mexicans were needed to change a lightbulb." (Compl. ¶ 12.) There is no allegation such an incident was ever repeated, and the Complaint admits that the individual who made the joke "later apologized to [High] and the team via email." (Compl. ¶ 14.) High accordingly plainly fails to state a claim for a hostile work environment. *See, e.g., Irani v. Palmetto Health*, 767 F. App'x 399, 416-17 (4th Cir. 2017) (allegation that supervisor twice called plaintiff "Achmed the terrorist" fails to support hostile environment claim because, "while the comments made in this case are odious, there is no evidence to suggest that the infrequent comments – two comments over an 18 month period – were so severe or pervasive as to be actionable"); *Whitfield v. DPL Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 492 (E.D.N.C. 2020) (granting Rule 12(b)(6) motion where allegations that "plaintiff was allegedly referred to as 'black Christel' an unspecified number of times" to distinguish her from a white employee whose first name was Crystal, "'black heifer' once, and black b****' twice over a period of six months," fail to state a claim for hostile work environment).

    More generally, this Court has granted 12(b)(6) motions to dismiss similarly weak hostile work environment claims where, as here, the plaintiff failed to plead work conditions that a reasonable person would find hostile or abusive. *See, e.g.*, *Sumner v. Mary Wash. Healthcare Physicians*, No. 3:15cv42, 2016 WL 5852856, at *10 (E.D. Va. Sep. 30, 2016) (Lauck, J.) (granting defendant's motion to dismiss the plaintiff's hostile work environment claim because plaintiff's complaint (1) did not demonstrate a pattern of harassment but, rather, a personality conflict between a supervisor and her subordinate; (2) contained none of the types of abusive language "courts have found severe enough to constitute a hostile work environment"; and (3) failed to allege any physical threat or humiliating conduct, or any conduct that unreasonably interfered with the plaintiff's work performance); *Sutton-Reed v. Va.*, No. 3:15cv764-HEH, 2016 WL 1276428, at

\*6 (E.D. Va. Mar. 30, 2016) (dismissing hostile work environment claim where the plaintiff "[did] not plead any physically threatening or especially humiliating comments occurred"); *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 696 (E.D. Va. 2018) (granting 12(b)(6) motion and noting "the Fourth Circuit has made clear that an 'insulting or demeaning remark does not create a federal cause of action ... merely because the 'victim' of the remark happens to belong to a class protected by Title VII'") (quoting *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997); *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (affirming dismissal where "the facts [plaintiff] alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age-based activity necessary to state a hostile work environment claim. [Plaintiff] was required to plead facts in support of her claim, and she had failed in that regard").

High's allegation of a one-time joke that was the subject of a subsequent apology and never repeated fails to state a hostile work environment claim, and to the extent Counts I and II of the Amended Complaint attempt to state such a claim they fail to do so and should be dismissed.

### IV.  HIGH'S COMPLAINT DOES NOT STATE A CLAIM FOR INTENTIONAL DISCRIMINATION (COUNTS I AND II).

A plaintiff can prove a discrimination claim under § 1981 through "direct or circumstantial evidence showing that an adverse employment action was [caused] by intentional discrimination aimed at the plaintiff's [race]," or through the "burden-shifting framework" of *McDonnell Douglas. Ali*, 832 F. App'x at 171 (citing *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). A plaintiff must allege facts making it plausible "that, but for race, [she] would not have suffered the loss of a legally protected right" under § 1981. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). *See also Jones-Debnam v. Bellarose Nursing & Rehab. Ctr., Inc.*, No. 5:20-CV-530-BO, 2021 WL 328250, at \*2 (E.D.N.C. Feb. 1,

2021) ("Asserting a claim of race-based discrimination requires plaintiff to prove what happened to her would not have occurred but for defendant's intention to discriminate on the basis of her race."); *Mazaiwana v. Progressive N. Ins. Co.*, Civil Action No. 3:19-cv-444, 2020 WL 14825592, at *4 (E.D. Va. Mar. 27, 2020) (finding the plaintiff failed to plead sufficient facts to state a discrimination claim pursuant to § 1981 because his complaint contained only conclusory allegations that did not plausibly demonstrate discrimination based on his race.)

Title VII plaintiffs, too, must allege facts supporting conclusions alleging unlawful discrimination. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015) (dismissing Title VII claim because plaintiff "alleged no factual basis for what happened 'during the course of her interview' to support the alleged conclusion" that defendant did not hire her because of her race or sex)

High's Complaint does not satisfy the standards set forth under § 1981 or Title VII for intentional discrimination because it pleads no facts whatsoever connecting her ethnicity or national origin and her termination (Counts I and II). She alleges that her employment ended not because of her ethnicity or national origin, but because her long-term disability benefits ended more than a year after she went on long-term disability. In effect, High offers nothing but baseless speculation that membership in a protected group caused an adverse employment action. That is insufficient to avoid dismissal under Rule 12(b)(6). *See, e.g.*, *Ali*, 832 F. App'x at 171-72, ("allegations in support of [plaintiff's] discriminatory-termination claim are too speculative and nonspecific to defeat a Rule 12(b)(6) motion") (citing *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015)); *Carter v. Va. Dep't of Game & Inland Fisheries*, No. 3:16cv661, 2017 WL 4413192, *12 (E.D. Va. Sep. 29, 2017) ("[Plaintiff] attributes her firing to Deputy Director Martel, but omits any assertion about *how* race influenced

Deputy Director Martel's decision to terminate her. . . . Without more, the Court cannot find that [plaintiff] plausibly states a race discrimination that survives a motion to dismiss."); *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) ("Being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination. To the contrary, they constitute only speculation as to . . . motivation."), *cert. denied*, No. 20-759, 2021 WL 666419 (U.S. Feb. 22, 2021). High has not pled actual facts to support a claim that her ethnicity or national origin was the reason for her discharge. Her Complaint is therefore ripe for dismissal.

### V. HIGH FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ON HER TITLE VII RETALIATORY DISCHARGE CLAIM (COUNT III).

The Amended Complaint alleges that Wells Fargo terminated High's employment on October 18, 2019. (Compl. ¶ 32.) Count III alleges that this violated Title VII because it was supposedly "in retaliation for engaging in the protected activity of complaining to her superiors about the discrimination and the hostile work environment to which she was subjected on the basis of her Dominican national origin." (Compl. ¶ 37.) No such purported ground for High's termination is mentioned in her March 27, 2020 EEOC Charge. That is fatal to her Title VII retaliation claim.

Before filing suit under Title VII, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Knight v. McCarthy*, 439 F. Supp. 3d 744, 754 (E.D. Va. 2020) (citing 42 U.S.C. § 2000e-5(f)(1)); *accord, e.g., Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009). The charge must describe "the action or practices complained of," *Jones*, 551 F.3d at 300, and "defines the scope of [the plaintiff's] subsequent right to institute a civil suit," *Knight*, 439 F. Supp. 3d at 754; *see also, e.g., Jones*, 551 F.3d at 300 ("The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents"). The failure of High's Charge to even

11

mention her alleged internal complaints of discrimination accordingly means they cannot be the subject of a lawsuit. Count III of the Amended Complaint should therefore be dismissed due to High's failure to exhaust her administrative remedies.

Moreover, it is too late for High to correct her error by filing a new charge. In Virginia an EEOC charge "must be filed within 300 days of the alleged act" complained of. *Pearson v. Prince William Cnty. Sch. Bd.*, No. 19-cv-1543, 2021 WL 1150068, at *11 n.12 (E.D. Va. Mar. 25, 2021). According to the Amended Complaint, High's employment with Wells Fargo ended October 18, 2019, and she is thus more than a year and a half out of time to file a charge. As a result, dismissal of Count III should be with prejudice, since any new charge would be time-barred.

**VI.    HIGH DOES NOT PLEAD SUFFICIENT FACTS TO SUPPORT HER RETALIATORY DISCHARGE CLAIMS (COUNTS III AND IV).**

High also fails to satisfy pleading standards for her retaliatory discharge claims (Counts III and IV). Title VII and § 1981 both recognize a cause of action for retaliation for opposing discrimination and are governed by the same standard. *Ali,* 832 F. App'x at 173; *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008); *Rodriguez v. Elon Univ.*, 751 F. App'x 395, 397 (4th Cir. 2018). An employee engages in protected activity when she "communicates to her employer a belief that the employer has engaged in" discrimination prohibited by Title VII or § 1981. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). To state a retaliation claim under § 1981 or Title VII, a plaintiff must allege plausible facts that, "but for" her protected activity, she would not have suffered a materially adverse action. *See Comcast Corp.*, 140 S. Ct. at 1019; *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). High fails to do so, for at least two reasons.

*First*, the more than year-long gap between High's alleged internal complaint and her termination is too attenuated to support a reasonable inference of causation. *Ali,* 832 F. App'x at

172–73 (temporal proximity may establish causation when protected activity and adverse action are "very close," but three- and four-month intervals are too attenuated) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (10-week period between protected activity and adverse employment action is "sufficiently long so as to weaken significantly the inference of causation between the two events").

*Second*, High simply does not allege facts that demonstrate a causal connection between her March 2018 protected activity and her October 2019 termination. High alleges that her employment ended after Wells Fargo ceased paying her disability insurance premiums in October 2019, not because she complained of discrimination; nor does High allege any statements or conduct from Wells Fargo that give rise to an inference that her discharge was in any way related to her protected activity. Even if each fact alleged in the Complaint were proven, only pure speculation could link High's termination to her 2018 internal complaint. High's retaliation claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Wells Fargo respectfully requests that the Court dismiss High's Complaint with prejudice.

Date: April 5, 2021                              Respectfully submitted,

                                          **FISHER & PHILLIPS LLP**

                                        ***/s/ Sherron Thomas McClain***
                                        Sherron Thomas McClain (#987190)
                                        Fisher & Phillips LLP
                                        7501 Wisconsin Avenue, Suite 1220W
                                        Bethesda, MD 20814
                                        (301) 880-5014 (Tel.)
                                        (301) 880-5031 (Fax)
                                        sthomasmcclain@fisherphillips.com

                                        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on the 5th day of April, 2021, she caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individual:

> Scott Gregory Crowley
> Crowley & Crowley
> 4870 Sadler Road
> Suite 300
> Glen Allen, VA 23060
> scrowley@crowleyandcrowley.com
>
> *Counsel for Plaintiff*

*/s/ Sherron Thomas McClain*
_____
Sherron Thomas McClain