**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

**JENNY M. HIGH,**

    **Plaintiff,**

**v.**                                                                                                                **Civil Action No. 3:21cv81**

**WELLS FARGO BANK,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Wells Fargo Bank's ("Wells Fargo") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (the "Motion"). (ECF No. 10.) Plaintiff Jenny M. High responded, (ECF No. 20), and Wells Fargo replied, (ECF No. 22).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2] For the reasons that follow, the Court will grant Wells Fargo's Motion to Dismiss in its entirety.

## I. Factual and Procedural Background

This employment action arises out of Wells Fargo's alleged discrimination against Hill based on her ethnicity and national origin, and subsequently retaliating against her for activities

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges that Wells Fargo violated High's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981(a) ("Section 1981").

allegedly protected by Title VII, 42 U.S.C. § 2000e-2,[3] and Section 1981.[4] (Am. Compl. ¶¶ 33–40, ECF No. 5.) High claims that Wells Fargo discriminated against her based on her Hispanic ethnicity and Dominican national origin by subjecting her to a hostile work environment and terminating her employment. (*Id.* ¶¶ 33–34.)

A. **Factual Background**[5]

In January 2004, High started her employment with Wells Fargo as a Help Desk Associate. (Am. Compl. ¶ 10.) From 2004 to 2017, High routinely received satisfactory to superior performance evaluations from her managers. (*Id.*)

On or about June 8, 2017, during a conference call that included system support analysts from across the United States, High alleges that Paul Salmela, a leader of another team, made a comment about Mexicans, specifically how many Mexicans were needed to change a lightbulb. (*Id.* ¶ 12.) High interpreted the comment as a slur against Mexicans, indicating that they "were lazy and exhibited . . . poor work ethic." (*Id.*) As a woman of Hispanic ethnicity and Dominican national origin, High alleges that the comment created an extremely hostile work environment

---

[3] Title VII prohibits employers from "discriminat[ing] against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment, because of such individual's" race, color or national origin. 42 U.S.C. § 2000e-2(a)(1).

[4] 42 U.S.C. § 1981(a) sets forth that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give grievance, and to the full and equal benefits of all laws and proceedings for the security of persons and property[.]" The Supreme Court held in *CBOCS West, Inc. v. Humphries* that § 1981 encompasses claims of retaliation. *See generally* 553 U.S. 442 (2008).

[5] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in High's Complaint as true, and draw all reasonable inferences in favor of High. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

for her. (*Id.* ¶ 13.) After "various members of her team complained," Salmela later apologized to her and the team via email. (*Id.* ¶ 14.)

Around March 2018, Wells Fargo reorganized the IT Group, placing High on the same team as Salmela. (*Id.* ¶ 15.) Distressed about her placement, High alleges she spoke with Larry Cullinan, a manager on her new team, about being placed on a different team. (*Id.* ¶ 16.) Cullinan refused and "responded that she needed to let go of her concern and anxiety." (*Id.*) On or about March 12, 2018, High followed up the conversation and sent an email to Cullinan that addressed "Paul Salmela's racist comments." (*Id.* ¶17.) In her email, High wrote, in relevant part:

> I understand that you will never understand what it feels like to be discriminated against, and in your opinion, since it only happened one time I should get over it. I have to learn to work with him, we all do, because you have. Larry I refuse to become a victim at the place I love to work. I know a lot of good people Paul has victimized including myself, and you do as well. The racist comment was the last straw that broke this camel's back, for you it may have been one time for me it was the last time. You advised me that someone filed a complaint against Paul regarding the racist comment and he was remorseful, you handled it, and me filing another complaint would probably be bounced back to you and end with the same results. I am very disappointed with that response. You asked me what do I want the outcome to be? I wanted you to protect the people you are being paid to protect, be a manager. I did what it tells in the Wells Fargo required trainings to do, we all did, and you are complacent. . . .

(*Id.*)

Two days later, without receiving a response from Cullinan, High talked to Tim Starr, another team manager, and sent him a copy of the same email. (*Id.* ¶ 18.) Starr told High that he forwarded her email to William Piper, his superior, who purportedly forwarded the email to Wells Fargo's Human Resources Department to commence an investigation. (*Id.*) High later learned that none of her complaints had been forwarded to Wells Fargo's Human Resources Department ("Human Resources"). (*Id.* ¶ 25.)

Around June 13, 2018, High submitted a complaint directly to Human Resources on Salmela's racial joke which included names of witnesses to the racial joke, but neither High nor the witnesses were contacted by Human Resources. (*Id.*) High subsequently sent "numerous" emails to Piper, but she did not receive any response from him. (*Id.* ¶ 26.)

Around May 2018, High alleges she "developed problems with her work-provided laptop computer that hindered her ability to perform assignments." (*Id.* ¶ 21.) While waiting for a computer, High alleges that she received several complaints regarding her "supposed failure to work." (*Id.*) During the same month, High's supervisors began to assign her "'tickets,' which were generated when Wells Fargo employees requested assistance with computer hardware, software and network issues." (*Id.* ¶ 22.) High characterizes these tasks as "low-level function of systems supports analysis" that she had not performed "since her earliest days with Wells Fargo." (*Id.*) Additionally, High's supervisors imposed the tickets on top of her normal volume of assignments. (*Id.*) High also alleges that her supervisors began to accuse her of not completing assignments that she had in fact completed. (*Id.*) Finally, High avers that "someone in the IT team sabotaged Ms. High's work by not renewing the access she need to complete assignments." (*Id.* ¶ 23.)

In late June 2018, "Wells Fargo scheduled a retreat" for High's IT Group of system analysts in St. Louis, Missouri. (*Id.* ¶ 27.) During the second day of the retreat, High attended a meeting that included Cullinan, Salmela, and a co-worker named Joseph Dillon. (*Id.* ¶ 27.) According to High, the three "accused her of not working, lying about her laptop computer malfunctioning and claimed that she never notified the help desk that it needed repair." (*Id.*) They also said that High was "incompetent in her job duties and needed to be demoted to the help desk" and that she was "lazy and clueless about her job responsibilities." (*Id.* ¶ 28.) Soon

4

after, High alleges that she "developed a sudden migraine headache and began rapidly hyperventilating," and felt like she was having "a heart attack and requested an ambulance." (*Id.* ¶ 29.) She claimed to be suffering a panic attack reaction to trauma. (*Id.*)

Around July 1, 2018, High's physician placed her on a medical leave of absence. (*Id.* ¶ 30.) Around October 18, 2019, High alleges that Wells Fargo terminated her for nonpayment of her "insurance premium to the company administering Wells Fargo's disability benefit plan." High's long-term disability benefits were terminated because Wells Fargo failed to make insurance premium payments to its insurance company. (*Id.* ¶ 31.) To redress her claims, High requests that the Court reinstate her to her former position. (*Id.* ¶ 40.) High also seeks "(a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, severe pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit." (*Id.*)

### B. Procedural Background[6]

On June 14, 2018, High filed an administrative Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging "disparate treatment relating to her pay due to her female sex, a hostile work environment due to her national origin, and retaliation for complaining of the hostile work environment when she transferred to a new IT team led by Salmela." (Am. Compl. ¶ 5.) The EEOC then transferred High's charge to the Office of the Attorney General of Virginia, Division of Human Rights. (*Id.*) On December 3,

---

[6] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in High's Complaint as true, and draw all reasonable inferences in favor of High. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

2019, the Division of Human Rights issued a determination finding "no reasonable cause to believe that Wells Fargo discriminated or retaliated against" High. (*Id.* ¶ 6.) "High received a Dismissal and Notice of Rights from the EEOC dated January 16, 2020, allowing her 90 days to commence suit in court." (*Id.*)

On February 24, 2020, High, appearing *pro se*, initiated her first case against Wells Fargo in this Court (the "February 2020 Case"). (*High v. Wells Fargo Bank*, No. 3:20cv121, ECF No. 1.) On April 13, 2020, the Court dismissed the February 2020 Case without prejudice for failure to prosecute because High failed file an Amended Complaint per the Court's March 10, 2020 Order. (*Id.*, ECF No. 13.) On February 12, 2021, High filed a second case before this Court. (ECF No. 1.) On April 5, 2021, Wells Fargo filed the Motion to Dismiss. (ECF No. 10.) High responded, (ECF No. 20), and Wells Fargo replied, (ECF No. 22).

The Amended Complaint brings four claims, as follows:

**Count I:** Wells Fargo subjected High to a hostile work environment and constructively discharges her employment based on her Hispanic ethnicity and Dominican national origin in violation of Title VII (the "Title VII Discrimination Claim");

**Count II:** Wells Fargo subjected High to a hostile work environment and constructively discharges her employment based on her Hispanic ancestral and ethnic characteristics and her Dominican national origin in violation of § 1981 (the "§ 1981 Discrimination Claim");

**Count III:** Wells Fargo retaliated against High by constructively discharging her employment for engaging in protected activity when she complained of ethnicity and national origin discrimination in violation of Title VII (the "Title VII Retaliation Claim");

**Count IV:** Wells Fargo retaliated against High by constructively discharging her employment for engaging in protected activity when she complained of ancestral, ethnicity, and national origin discrimination in violation of § 1981 (the "§ 1981 Retaliation Claim").

(Am. Compl. ¶¶ 33, 35, 37, 39.)

6

For the reasons stated below, the Court will grant the Motion to Dismiss.

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193.  The Court must assume all well pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of

the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

In *Fort Bend County, Texas v. Davis*, the Supreme Court held that Title VII's requirement that a plaintiff file a charge with the EEOC prior to bringing suit constituted a mandatory requirement, but did not affect the reviewing court's jurisdiction. 139 S. Ct. 1843, 1852 (2019). Therefore, a court "must enforce the rule if a party 'properly raise[s] it," but a plaintiff's failure to file an EEOC Charge does not affect a reviewing court's jurisdiction. *Id.* at 1849, 1852.

The Supreme Court has previously explained that "[m]andatory claim-processing rules are less stern [than jurisdictional requirements]." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17–18 (2017) (internal quotation marks and citations omitted). If properly invoked, the Court must enforce mandatory claim-processing rules, but such rules may be waived or forfeited. *Id.* "[C]laim-processing rules . . . [ensure] relief to a party properly raising them, but do not compel the same result if the party forfeits them." *Id.*

### III. Analysis

Because High filed her suit after the statutory deadline provided in the Title VII, the Court must dismiss her suit as untimely. For this reason, the Court will grant the Motion to Dismiss and dismiss the Amended Complaint with prejudice.

A.     **Legal Standard:  Title VII's Statute of Limitations**

Title VII requires a plaintiff to file a complaint in federal court within 90 days of the receipt of a right-to-sue letter[7] issued by the EEOC.  42 U.S.C. § 2000e-5(f)(1); *Bryant v. Atl. Md., Inc.*, 288 F.3d 124, 132 (4th. Cir. 2002).  Courts in the Fourth Circuit strictly construe the 90-day time limit in which a plaintiff must file suit following receipt of a right-to-sue letter.  *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2013) (ADEA) (citing *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652 (4th Cir. 1987) (Title VII)); *Boyce v. Fleet Finance Inc.*, 802 F. Supp. 1404 (E.D. Va. 1992) (Title VII).  The time limit begins when either the plaintiff or the plaintiff's attorney receives the right-to-sue letter.  *Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 93 (1990).

The Fourth Circuit has held that dismissal without prejudice of a discrimination suit under federal statutes does not toll the ninety-day statute of limitations for filing a claim.  *Angles v. Dollar Tree Store, Inc.*, 494 Fed. Appx. 326, 329 (4th Cir. 2012); *see also Aziz*, 165 F.3d at 17 ("[a] dismissal without prejudice does not toll the statutory period for filing an action [under Title VII]"); *Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001) (finding that state savings statute did not toll statute of limitations for plaintiff's federal claim in federal court); *Nwaobasi v. First Sec. Fed. Sav. Bank, Inc.*, 105 F.3d 647, 647 (4th Cir. 1997) ("Since [plaintiff] filed her second complaint more than one year after receiving her right to sue letter, that complaint was time-barred.")

---

[7] A right-to-sue letter, EEOC Form 161, informs the employee of the reason the EEOC declined to proceed against the offending employer and contains a "Notice of Suit Rights" section, which informs the petitioner of her or his right to bring suit against the offending employer.  U.S. EQUAL EMP'T OPPORTUNITY COMM'N, EEOC FORM 161:  DISMISSAL AND NOTICE OF RIGHTS (2009), https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/ forms/form_ 161.pdf.

Courts in the Fourth Circuit engage in a "case-by-case examination to determine if an equitable tolling of the filing period is appropriate." *Nguyen v. Inova Alexandria Hosp.*, No. No. 98cv2215, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) (citations and quotation marks omitted). The doctrine of equitable tolling is to be employed "sparingly." *Irwin v. Dep't Veterans Affs.*, 498 U.S. 89, 96 (1990). "Equitable tolling has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies." *Hazlegrove v. Colonial Pipeline Co.*, No. 3:18cv284, 2018 WL 6683030, at *4 (E.D. Va. Dec. 19, 2018) (citing *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015)). For equitable tolling to apply, the plaintiff must show: "(1) extraordinary circumstances, (2) beyond [her or] his control or external to [her or] his own conduct, (3) that prevented [her or] him from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citation omitted). The Supreme Court has cautioned against the expanded use of the equitable tolling doctrine, stating that "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (citation and quotation marks omitted).

### B. Title VII's 90-Day Statute of Limitations Bars High's Suit

Title VII's ninety-day statute of limitations bars High's second suit in this Court. High received the Right-to-Sue Letter on January 16, 2020. (Am. Compl. ¶ 6.) Pursuant to the 90-day limitation, High had until April 15, 2020 to initiate her lawsuit. High did not file the Complaint in the above-captioned matter until February 12, 2021, over a year later.

While High did file *pro se* on February 24, 2020, her initial complaint, she was instructed by the Court to file an amended complaint by April 10, 2020. (*High v. Wells Fargo Bank*,

No. 3:20cv121, Mar. 10, 2020 Order, ECF No. 2.) Because High failed to timely file the amended complaint, the Court dismissed her initial complaint without prejudice on April 13, 2020. (*Id.* Apr. 13, 2020 Order, ECF No. 5.) Because a dismissal without prejudice does not toll the 90-day statute of limitations, High's Amended Complaint in the instant case falls beyond one year of her receipt of the Right to Sue Letter. Title VII's statute of limitations therefore bars this action.

High argues "the allegations in the [Amended] Complaint commencing the Second Action relate back to Ms. High's First Action, pursuant to Fed. R. Civ. P. 15(c)."[8] (Resp. 8–9, ECF No. 20.) High also notes that "the issue of timeliness then turns on whether the First Action tolled the [ninety]-day filing deadline for Title VII claims." (*Id.* 8.) Because well-established precedent does not allow tolling of statute of limitations, High's Amended Complaint is untimely filed. Moreover, High does not argue that her case justifies the extraordinary remedy of equitable tolling. Indeed, she admits that "if not [tolled], then the Complaint filed in the Section Action on [February 12, 2021] would be well beyond 90 days from the date of issuance of the EEOC's Notice of Right to Sue on January 16, 2020." (*Id.* 9.) Even were her case to be tolled for the period during which her initial action remained open, High delayed refiling her case for a near ten months after the Court dismissed her first action without prejudice on April 13, 2020. Such a delay certainly falls beyond the allegedly tolled limitations period.

Because the Amended Complaint falls well beyond the 90-day limitation and High does not state any facts that compel the extraordinary remedy of tolling, the Court will grant the Motion to Dismiss in its entirety.

---

[8] High points to Rule 15(c)(1)(B) which states that "[a]n amendment to a pleading relates back to the date of the original pleading when: (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

11

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. The Court will dismiss High's Amended Complaint with prejudice.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/21/2021
Richmond, Virginia